Guria, per RichaudsoN, J.
This, was a special action on the case, for unlawfully distraining the tools of the plain- • tiff, and making an excessive and oppressive distress for rent in arrear. The important inquiry of general interest is, then, what is the proper exposition of the Act. of 1823, in exempting from a levy or seizure, “the tools of a mechanic.” The words of the Act are, “If .a mechanic, the tools of his trade.” Who is a mechanic? .According to our accredited lexicographer, a mechanic is “a manufacturer, an artificer.” Dr. Johnson adds, “ a low workman,” and he defines “a manufacturer” to be “a workman,” “an artificer” — an artificer, he says, “is one by whom any thing is made;” a machinist, he calls “a constructer of engines and machines.” According to the evidence of Happoldt, the plaintiff, Parker-son, comes under the last class of mechanics. He was a machinist. His tools, the witness said, were worth five hundred dollars. Therefore, we may in reason conclude, Parker-son was a master workman, and not a mere journeyman, hired by the day, or a jobber to do chance work, &c. which class of'inferior workmen only, according to the opposite argument, comes under the exemption of the Act. Do the tools, then, of such master workmen, fall within the exemption of the Act, or is it to be confined to journeymen, jobbers, and the like ? The question may, possibly, admit of some difference df opinion; but I cannot but apprehend that the Act ought to receive a liberal construction. That it means to exempt the tools of all mechanics, who personally work with their own tools, and with their own hands, in contradistinction to contractors, superintendants, capitalists, or mere owners of machinery — as, for instance, of a cotton manufactory or steam mill. Such capitalists cannot come within the meaning of mechanics. They are more of the class of proprietors, inventors or projectors. That is, none of them work personally with tools, which is the essential *366 characteristic of a mechanic, or what Johnson calls “alow (workman.” I would rather call him a labouring artificer— one that can prove his practical operation by the hardened £ngers 0f personai industry. As the case is new aud important, let me illustrate my idea, by the next preceding provision of the Act. “If a farmer, his farming utensils.” It cannot be supposed that this exemption would extend to all the utensils of a plantea-or proprietor — but means the utensils actually aud personally used by the labouring farmer — in contradistinction to those kept for his labourers, by a planter; or what the English call a gentleman farmer. Not so. The exemption is for him who, like the virtuous Roman dictator, with hand to handle governed his own plough. In like 'manner, are the labouring mechanic’s tools exempt, and so exempt, although, if, for instance, a button-maker, he uses as fine tools as the late royal button maker of our fatherland ; or, if a practical lock-smith, he held the tools of the late French Monarch, who is said to have been enamoured of this useful art. We would not distinguish such tools,-if practically used by the mechanic, from the saw and the axe of the venerated. Joseph, the- carpenter. The practical artist is the test, not the fineness of the tools he uses. If such be the true intendment of the Act, the master machinist, Par-kerson, comes within its exemption ; and his tools were, consequently, protected against the defendant’s distress warrant. This settles' the question of general interest, — who is a mechanic under the Act? The next question is — whether Wightman, the defendant, is liable, in this instance, for the unlawful distress made by his bailiff, Dennis, inasmuch as Dennis was directed not to levy upon the tools of Parkerson, meaning, of course, the exempted tools. On this head, the law is well settled. Delegated power must be strictly pursued, or the principal is not liable. (See Welsh v. Parish et al.) But the principal is bound by the acts of the agent, done in the course of his employment. (See Topham v. Roche, Corbet v. the same. And it is conceded that the principal is not bound for the wilful trespass of his agent. But on the other hand, it is equally clear, that he is bound to provide a fit agent, and that he is liable- for his negligence, fraud, or want of skill in executing his agency. Now, it is evident that, either through .negligence, ignorance or misunderstanding his instructions, while Dennis would seem to have avoided distraining, as he was instructed, upon what he considered protected tools, he still levied upon other tools, which were equally protected; and, unfortunately, he levied upbn select portions of such tools as caused great loss to Parkerson, by disjoining them from others ; when the value of both depended greatly upon keeping them united. For instance — it was said Re avoided distraining upon a turning *367 lathe, as a protected tool; but he levied upon the appendages and tools of the lathe, &c. In this way he made the distress so excessive and oppressive, that tools of the value of about three hundred dollars, sold for about thirty dollars. And so far from such selection of tools, by Dennis, being against the instructions of Wightman, it would seem, by the course followed, the sale and the disposition of the proceeds, and the argument before the Court, that he, himself, if he had distrained in person, would have followed the same course of mistaken discrimination between the tools of Parkerson, as if a portion only was exempt.
So that, according to my understanding of the law of principal and agent, the case presents a striking illustration of the liability of a principal for the conduct of his agent, when he acts improperly and unlawfully, but within the scope of his agency. If Dennis had committed a wilful outrage or trespass, 'Wightman could not have been made liable. (See the case of O'Neal v. Reigne.) But he is clearly liable for acts done within the delegated authority; and that is the case before the Court. Without, therefore, resorting to the argument, which I consider conclusive, that Wight-man ratified the acts of Dennis after he knew that the distress had been made, by permitting the sale and receiving the money, this Court concurs with the presiding Judge in ■both principles of law which are objected to in the appeal, to wit: — that Parkerson was a mechanic, within the meaning of the Act, and Wightman liable for the illegal .distress made by his agent, Dennis, through ignorance, negligence or design, under colour of the distress warrant.
Lastly, as to the suggestion that the amount of the rent, thirty dollars, ought to be deducted from the verdict, it is entirely untenable. Because the verdict aíHrms that the distress was excessive and oppressive, and, of course, unlawful, the defendant, therefore, can have no benefit or advantage from his conduct. A wrong done, can give no legal and pecuniary claim to the wrong doer. In fact, and upon the merits of the case, the excessiveness and manner of the distress, in choosing and separating the tools, might be well considered the true gravamen of the plaintiff’s action. The motion is, therefore, dismissed, on all the grounds of the appeal.
Evans, Wardlaw, and Frost, JJ. concurred.

Motion rejused.